**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Raymond P. Moore**

Civil Action No. 1:12-cv-00441-RM-KMT

ERIC DAVID SIPF,

      Third-Party Plaintiff,

v.

JOHN C. HERBERS,
THOMAS KELLER,
CRAIG MAGNUSON, and
MAGNUM ACTUARIAL GROUP, LLC,

      Third-Party Defendants.

---

## ORDER

---

      THIS MATTER arises from Plaintiffs Carol Sonnenberg, Michael Sonnenberg, and

American Financial Securities Holdings, Inc.'s (collectively, the "Sonnenbergs") alleged loss of

their investment in Imerica Administrative Services Corporation ("IASC"), a now defunct

holding company whose only asset was Imerica Life and Health Insurance Company

("Imerica").  Invoking this Court's subject matter jurisdiction based on diversity of citizenship,

the Sonnenbergs filed this action asserting state law claims based on alleged material

misrepresentations and omissions made in connection with the sale of IASC securities to the

Sonnenbergs.  Some of the Defendants filed third-party claims against Third-Party Defendants.[1]

---

[1] Third-Party Plaintiffs alleged the Third-Party Complaint was based on diversity jurisdiction because there was complete diversity between the Sonnenbergs and Defendants and Third-Party Defendants.  Assuming that is the proper basis for jurisdiction, whether complete diversity existed is unclear as Third-Party Defendant Magnum Actuarial Group, LLC is a limited liability company and its citizenship is determined by the citizenship of all its members, *Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 781 F.3d 1233, 1238 (10th Cir. 2015), and their identities and citizenships were not alleged in the Third-Party Complaint.  Nonetheless, subject matter jurisdiction exists over the third-party claims based on supplemental jurisdiction under 28 U.S.C. § 1367(a).

Subsequently, the Sonnenbergs settled all claims against all Defendants, and some of the third-party claims were settled.  The issue before the Court is whether it should retain supplemental jurisdiction[2] over the remaining state law third-party claims in light of the dismissal of the original state law claims upon which this Court's subject matter jurisdiction was based.  (ECF Nos. 247, 248.)  In addition, if the Court retains jurisdiction, the following substantive motions are ripe for resolution:

1. Third-Party Defendants Thomas Keller, Craig Magnuson, and Magnum Actuarial Group, LLC (collectively, "Magnum"):

   (i)    Motion for Summary Judgment (ECF No. 99); and

   (ii)   Motion for Summary Judgment (ECF No. 254); and

2. Third-Party Defendant John Herbers:

   (i)    Motion for Summary Judgment (ECF No. 165);

   (iii)  Brief Regarding Sipf's Contribution Claims (ECF No. 252),[3] which the Court construes as a motion for partial summary judgment; and

   (ii)   Joinder in Magnum Defendants' Motion for Summary Judgment (ECF No. 256).

Herbers' and Magnum's papers also contain various joinders to each other's arguments.

The Court has reviewed all pending matters, taken judicial notice of the court's file, analyzed the applicable statutes, rules and case law, and considered the arguments of counsel at the hearing held on January 30, 2014, along with papers filed thereafter.  Upon consideration of all relevant matters, the Court finds: (1) the exercise of supplemental jurisdiction in this instance

---

[2] There is no complete diversity between remaining Third-Party Plaintiff Sipf and the remaining Third-Party Defendants.

[3] The parties have argued the contribution issue as if it was ripe for summary judgment; therefore, the Court has treated Herbers' and Magnum's papers accordingly.

is appropriate; (2) the shareholder standing rule applies to bar Sipf's Fourth and Sixth Claims for

Relief for Breach of Fiduciary Duty and Aiding and Abetting Breach of Fiduciary Duties,

respectively, as the only injury alleged is Sipf's loss of his investment in IASC; and (3) that

Sipf's settlement with the Sonnenbergs without extinguishing the parties' alleged common

liability or discharging the alleged common obligation bars Sipf's claims for contributions under

the Uniform Contribution Among Tortfeasors Act, C.R.S. § 13-50.5-101 *et seq.* ("UCATA"),

and the Colorado Securities Act, C.R.S. § 11-51-604.

## I.     PROCEDURAL AND FACTUAL BACKGROUND

The Sonnenbergs filed four complaints in this case, based solely on diversity jurisdiction.

Defendants filed Designations of Nonparties at Fault (ECF Nos. 32-34), identifying, among

others, John C. Herbers, Robert Ruiz-Moss, and Magnum as nonparties who are wholly or

partially at fault for the Sonnenbergs' claims.  Some Defendants also filed a Third-Party

Complaint against Herbers, Magnum, and others.  (ECF No. 36.)  Over time, the Sonnenbergs

settled their claims with all Defendants, with Sipf as the last Defendant to settle.  (ECF No. 251.)

Although the Sonnenbergs never filed any claim against nonparties/Third-Party Defendants

Herbers and Magnum, those parties also entered into settlement agreements.  (ECF No. 165,

Exhibit A; No. 255; No. 258.)  The Sonnenbergs' action was dismissed, leaving only the Third-

Party Complaint at issue.

As for the Third-Party Complaint, all third-parties settled except for Third-Party Plaintiff

Sipf and Third-Party Defendants Herbers and Magnum, with the following claims remaining for

resolution:[4]

> First Claim for Relief – Against Herbers:
> Contribution on Plaintiffs' First Claim (Securities Violation);

---

[4] During oral argument, Sipf advised that his claims are for contribution; therefore the Court considers the claims
based on indemnification withdrawn.  The Fifth Claim for negligence was voluntarily dismissed.  (ECF No. 183.)

Second Claim for Relief – Against Herbers:
Contribution on Plaintiffs' Second Claim (Fraudulent Concealment);

Third Claim for Relief – Against Magnum Defendants:
Contribution;

Fourth Claim for Relief – Against Herbers:
Breach of Fiduciary Duty; and

Sixth Claim for Relief – Against Magnum Defendants:
Aiding and Abetting Breach of Fiduciary Duties.

## II.   SUMMARY OF FACTUAL ALLEGATIONS[5]

According to the Sonnenbergs, the directors and management of IASC solicited investors

in IASC and, in connection with that solicitation, furnished an Offering Memorandum which

contained material misrepresentations and omissions.  In 2009, the Sonnenbergs were solicited to

purchase securities of IASC by Sipf (the Chairman of Imerica), Ruiz-Moss (the CEO of Imerica),

and Herbers (the President of Imerica), and were furnished copies of the Offering Memorandum,

upon which the Sonnenbergs relied in making their investments in IASC.  The Sonnenbergs

asserted two claims for relief: (1) Violation of Colorado Securities Act; and (2) Fraudulent

Concealment.  They alleged the Defendants engaged in a number of acts or omissions in

violation of the Colorado Securities Act and were "control persons" under C.R.S. § 11-51-

604(5)(b), subject to joint and several liability with IASC.  They sought to recover their

investment paid for the securities.  In addition, the Sonnenbergs alleged that Defendants

fraudulently concealed a number of material facts for which actual damages were sought.

According to Sipf, Herbers is liable for contribution because he was a member of IASC's

management, was a director of IASC, and directly communicated with the Sonnenbergs

---

[5] This is a brief summary.  To the extent any facts are required for any specific motion for summary judgment, they
are included in the section analyzing that specific motion.  Magnum relied on various allegations of the Third-Party
Complaint for their Motion for Summary Judgment based on lack of standing.  Herbers joined in the motion.

regarding investments in IASC.  Thus, if Sipf is found liable to the Sonnenbergs, Herbers is liable to Sipf for any damages which may be assessed against Sipf.

As for Magnum, Sipf asserts that Magnum entered into a Consulting Services Agreement with IASC to provide Imerica with actuarial services.  Imerica, with Magnum's assistance, set insurance premium rates at unreasonably low levels, which Magnum, Herbers and others concealed from the board of directors of IASC, including Sipf.  Magnum's alleged participation in setting rates too low and the concealment of this fact led to the financial problems which caused  Imerica's and IASC's financial collapse, causing the Sonnenbergs' loss of investment. Accordingly, Magnum is liable to Sipf for any liability he may have to the Sonnenbergs.

In addition, as to all Third-Party Defendants, Sipf contends they worked together to set the premium rates unreasonably low and concealed this fact from Sipf, causing Sipf to lose his own investments.

## III.   LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569-70 (10th Cir. 1994).  Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Carey v. United States Postal Serv.,* 812 F.2d 621, 623 (10th Cir. 1987).  Once the moving party meets its initial burden of demonstrating an absence of a genuine dispute of material fact, the burden then shifts to the nonmoving party to demonstrate the existence of a genuine dispute of material fact to be resolved at trial. *See 1-800-Contacts, Inc. v.*

*Lens.com, Inc.,* 722 F.3d 1229, 1242 (10th Cir. 2013) (citation omitted).  The nonmovant "must

set forth evidence sufficient for a reasonable jury to return a verdict in his favor." *Rice v. U.S.*,

166 F.3d 1088, 1092 (10th Cir. 1999).

If a movant properly supports a motion for summary judgment, the opposing party may

not rest on the allegations contained in his complaint, but must respond with specific facts

showing a genuine factual issue for trial.  Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372,

380 (2007) (holding that "[t]he mere existence of *some* alleged factual dispute between the

parties will not defeat an otherwise properly supported motion for summary judgment; the

requirement is that there be no *genuine* issue of *material* fact") (citation omitted; emphasis in

original).  A fact is "material" if it pertains to an element of a claim or defense; a factual dispute

is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury

could return a verdict for either party.  *Anderson*, 477 U.S. at 248.  In considering whether

summary judgment is appropriate, the facts must be considered in a light most favorable to the

non-moving party.  *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013)

(citations omitted).

IV.    **LEGAL ANALYSIS**

   **A.  SUBJECT MATTER JURISDICTION**

This Court had diversity jurisdiction over the Sonnenbergs' claims against Defendants,

and supplemental jurisdiction over Third-Party Plaintiffs' Third-Party Complaint against Third-

Party Defendants.  As the case currently stands, the Sonnenbergs have settled their case against

all Defendants.  At issue now is whether this Court should retain supplemental jurisdiction over

Sipf's remaining third-party claims against Herbers and Magnum.  Upon consideration of all

relevant matters, and the facts and circumstances of this case, the Court finds it should exercise

its discretion and will retain supplemental jurisdiction over the remaining third-party claims. *See Barlow v. C.R. England, Inc.*, 703 F.3d 497, 511 (10th Cir. 2012) ("As all of [plaintiff's] federal claims have been dismissed, we leave it to the district court to decide in the first instance whether it will continue to exercise supplemental jurisdiction over the state-law claim.")

Pursuant to 28 U.S.C. § 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." However, as relevant to the issue at hand, "[t]he district courts *may* decline to exercise supplemental jurisdiction over a claim under subsection (a) if: (1) the claim raises a novel or complex issue of State law; [or] … (3) the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c) (emphasis added).

The United States Court of Appeals for the Tenth Circuit has "generally held that if federal claims are dismissed before trial, leaving only issues of state law, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Brooks v. Gaenzle*, 614 F.3d 1213, 1229 (10th Cir. 2010) (internal quotation marks, brackets, and citation omitted); *see Merrifield v. Board of Cnty. Comm'rs for the Cnty. of Santa Fe*, 654 F.3d 1073, 1086 (10th Cir. 2011). However, the Tenth Circuit has stated "[t]he Supreme Court has instructed that 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims.'" *Merrifield*, 654 F.3d at 1085 (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). The *Carnegie* decision further suggests that inflexibility, blanket prohibitions, and

categorical prohibitions on a district court's discretion may not be warranted. *See Carnegie*, 484 U.S. at 350 n.7, 356 n.12, 357.

In this case, the Court's diversity jurisdiction existed until nearly the eve of trial. A final pretrial conference was held on December 16, 2013. A trial preparation conference was set for January 13, 2014, with trial to begin on January 21, 2014. (ECF No. 220, 89.) Two days before the trial preparation conference, and less than two weeks before trial, the Sonnenbergs notified the Court they had settled with Sipf, then the remaining Defendant. (ECF No. 241.) In light of the settlement, the Court vacated the trial date and asked the parties to brief various issues. Many of the state law issues now before the Court were pending before the Sonnenbergs settled with Sipf, and were fully briefed and ripe for determination.

The Sonnenbergs' settlements resulted in the dismissal of state law claims, the only claims asserted, leaving third-party state law claims for resolution. Before the settlements, although only state law claims were –and are – at issue, no party asked the Court to consider whether it could – and should – decline to exercise supplemental jurisdiction over the third-party claims, or to certify any questions of state law to the Colorado Supreme Court. If the Court were to dismiss the claims now, Sipf would be required to begin anew in state court, incurring significant expense, time, and delay in developing his case once again. Therefore, the Court finds it is appropriate to exercise its discretion and retain jurisdiction in this instance.

Herbers argues that Sipf's contribution and breach of fiduciary duty claims raise complex issues of Colorado law. The Court finds that while some of the contribution issues under the circumstances of this case may arguably be complex, the parties have fully briefed these issues. Further, the Court finds that the breach of fiduciary duty issues are not so complex, there is

sufficient Colorado law on the issue and, again, the parties have fully apprised the Court of the state of the law.

The Court recognizes that the interest of comity is of considerable weight in evaluating whether to retain state law claims. However, in this instance, there were only state law claims before the Court, and the settlement which divested the Court of its original jurisdiction occurred on nearly the eve of trial after all state law matters then at issue were fully briefed and the parties were prepared for trial. Under the facts and circumstances of this case, the Court finds the interests of judicial economy, convenience, and fairness weighs more heavily in favor of exercising jurisdiction to decide the remaining claims. Accordingly, the Court will retain jurisdiction over the remaining third-party claims.

### B. SIPF'S STANDING TO SUE – THE SHAREHOLDER STANDING RULE

Magnum's Motion for Summary Judgment (ECF No. 99) raises the sole issue of whether Sipf has standing to sue Magnum.[6] Herbers subsequently joined in Magnum's argument, but only as to the Fourth Claim for Relief for Breach of Fiduciary Duty. (ECF No. 260, page 3.)[7]

### 1. Magnum's Motion for Summary Judgment  (ECF No. 99)

### a. Material Undisputed Facts[8]

Based on the papers and oral argument, the following material facts are undisputed. Sipf was a director and chairman of the board of directors of IASC and Imerica, and a shareholder of IASC. Magnum contracted with IASC to provide Imerica with actuarial services and insurance consulting services.

---

[6] Magnum raises that argument again in a subsequent motion for summary judgment.  (ECF No. 254.)
[7] Herbers originally argued that Sipf's only alleged injury is the diminished value of his investment in IASC.  (ECF No. 256.)  Now, Herbers acknowledges that Sipf's original claims for contribution "sought contribution for any liability imposed upon [Sipf] pursuant to Plaintiffs' [the Sonnenbergs] claims," and contends only Sipf's breach of fiduciary duty claim is barred by the shareholder standing rule.  (ECF No. 260, pages 2, 3.)
[8] Magnum's Rule 56 motion also relies on a summary of allegations to provide background information.

### b.  Analysis

In the Third-Party Complaint, Sipf asserted claims against Magnum for contribution (Third Claim); and aiding and abetting breach of fiduciary duties (Sixth Claim).  Magnum contends that the only damages claimed by Sipf is the loss of his investment,[9] and the "shareholder standing rule" precludes Sipf – a shareholder – from bringing any claim against a third-party vendor to the corporation, here, IASC.  Sipf, however, argues the shareholder standing rule does not apply as he is suing as a director and is seeking to recover for those damages which Sipf may be liable to the Sonnenbergs.  During oral argument, Sipf clarified that because he has settled with the Sonnenbergs, his damages now are what he paid in settlement to the Sonnenbergs, adjusted for any determination of proportionate fault.  The Court agrees with Sipf's argument, but this only saves his contribution claim.

Under Colorado's shareholder standing rule, "as a general rule, a stockholder cannot maintain a personal action against a director or other third party whose action causes harm to the corporation.  Generally, it is the corporation, or the stockholder in a derivative action…who must pursue such a claim." *Nicholson v. Ash*, 800 P.2d 1352, 1356 (Colo. App. 1990); *see also Combs v. PricewaterhouseCoopers LLP*, 382 F.3d 1196, 1200 (10th Cir. 2004) (quoting *Nicholson*).  As an exception to the general rule, "[a] stockholder may maintain a personal action in his capacity as a stockholder only if the actions of the third party that injure the corporation result from a violation of a duty owed to him as a stockholder and that cause him injury as a shareholder, unique to himself and not suffered by the other stockholders." *Nicholson*, 800 P.2d at 1357; *Combs*, 382 F.3d at 1201.

In this case, Sipf is a shareholder of IASC, but his contribution claim is not based on his status as a shareholder.  Instead, Sipf brings that claim in his capacity as a director and chairman

---

[9] A simple review of the Third-Party Complaint shows this assertion is incorrect.

of the board.  Here, the Sonnenbergs sought to hold Sipf liable not because he was a shareholder but because he was allegedly a part of "management" and a "control" person and, in such capacity, allegedly made misrepresentations and omissions resulting in the loss of the Sonnenbergs' investments.  Sipf's alleged damages arise from his capacity as ISAC's director/chairman – Sipf is attempting to recover that which he paid to the Sonnenbergs not, as Magnum argues, "only" for his loss of investment in IASC.  Accordingly, Sipf's suit in his capacity as a director and his alleged damages show that his status as a shareholder does not, without more, bring his contribution claim within the shareholder standing rules.  *See Nicholson*, 80 P.2d at 1356-1357 (recognizing party may have more than one relationship with a corporation, and that a distinction exists between a party's status as a creditor versus a stockholder).

Sipf's aiding and abetting breach of fiduciary duties claim, however, is another matter.  In this claim, Sipf alleges that Magnum knew Herbers, and others, were breaching their fiduciary duties to Sipf as a director and shareholder of IASC, and knowingly participated in that breach.  The breaches alleged are the setting of insurance premiums at rates lower than recommended and at levels at which Magnum predicted "would cause losses to ISAC."  (ECF No. 36, ¶53.)  Magnum's alleged aiding and abetting of Herbers' breaches of fiduciary duty caused Sipf to lose his investments in IASC.  Such allegations, however, are essentially of mismanagement of the corporation, and the aiding and abetting of the same, and they fail for two reasons.  First, to the extent Sipf is seeking to use his status as a director, his claimed loss of investment is unassociated with such status.  Secondly, to the extent that Sipf is seeking to use his status as a shareholder, his claimed injury – the loss of his investment – is an injury suffered by all other stockholders.  The right of action against directors for mismanagement, and third-parties who aid

and abet such mismanagement, is owned by the corporation, ISAC, as the party damaged.  *See Nicholson*, 800 P.2d at 1354-55.  "[A]ny damage resulting to the stockholder is merely indirect[.]"  *Nicholson*, 800 P.2d at 1356.  Accordingly, Sipf lacks standing to assert a claim for aiding and abetting breach of fiduciary duties (Sixth Claim) resulting in the loss of his investment.

During oral argument, Sipf agreed he would not be entitled to recover his investment.  Nonetheless, Sipf argues that he could recover damages paid in settlement, adjusted by proportionate fault, on his claim for aiding and abetting breach of fiduciary duties.  That theory, however, was neither pled in the Third-Party Complaint nor set forth in the Final Pretrial Order (the "FPO").  Instead, in the FPO, Sipf stated that his third-party claims against Magnum was "for aiding and abetting breach of fiduciary duties by … Herbers … by knowingly participating in such breach by agreeing not to disclose, and not disclosing, to Sipf … that insurance premium rates were being set at rates they considered to be actuarially unjustifiable at levels they predicted would cause higher-than-projected losses to IASC."  (ECF No. 201, page 10.)  The FPO controls and may not be amended absent the need to "prevent manifest injustice."  Fed. R. Civ. P. 16(e).  Having never sought to amend the FPO to include this belated theory, the Court will not consider it now in ruling on Magnum's Motion for Summary Judgment.  *See Salazar v. City of Commerce City*, No. 12-1390, 535 F. App'x 692, 694-95 (10th Cir. Sept. 23, 2013) (district court did not abuse discretion in declining to consider a hostile-work-environment claim in its summary judgment ruling where such claim was not included in final pretrial order, was a different theory of recovery with different requirements of proof, and where plaintiff had not sought to amend the order to include the theory).

In summary, Magnum's Motion for Summary Judgment based on standing is denied as to Sipf's Third Claim for Contribution but granted as to Sipf's Sixth Claim for Aiding and Abetting Breach of Fiduciary Duties. The question remains, however, whether a right of contribution exists under the facts and circumstances of this case. That question is addressed below.

### 2.  Herbers' Joinder in Magnum's Motion for Summary Judgment (ECF No. 256)

Similar to Magnum, Herbers' motion argues the only damages sought by Sipf against Herbers are for the loss of Sipf's investment in IASC and, therefore, Sipf's claims are barred by the shareholder standing rule. (ECF No. 256.) In response,[10] Sipf argues his claim for contribution is for any liability incurred by him to the Sonnenbergs. Now, having settled with the Sonnenbergs, Sipf claims contribution for what he paid to the Sonnenbergs in settlement, "in excess of any liability which may be allocated to him by the trier of fact in this case." (ECF No. 259.) In Herbers' Reply, he apparently acknowledges that Sipf seeks more than just the loss of his investment in IASC. (ECF No. 260.) Again, as with Sipf's claims against Magnum, the Court finds merit in Sipf's argument, but only as to his contribution claims against Herbers.

Specifically, Sipf brings three claims against Herbers – two for contribution (First and Second Claim) and one for breach of fiduciary duty (Fourth Claim). As with Sipf's contribution claim against Magnum, and for the same reasons, Sipf has standing to bring his two claims for contribution. Contrary to Herbers' contention, and as apparently subsequently acknowledged, on such claims Sipf sues not for loss of his investment but for his liability to (and, now settlement with) the Sonnenbergs. And, for the same reasons why Sipf lacks standing to sue Magnum for aiding and abetting breach of fiduciary duties, Sipf lacks standing to bring a claim for breach of fiduciary duty against Herbers. In such claim, Sipf sues based on his status as a director and

---

[10] Herbers viewed Sipf's response (ECF No. 259) as directed not only to Magnum's motion (ECF No. 254) but also to Herbers' joinder (ECF No. 256) in that motion. (ECF No. 260.)

shareholder, but the damages alleged are his loss of investments in IASC.  (ECF No. 174, page 3; No. 201, Final Pretrial Order, page 10; No. 36, ¶¶26, 43, 44.)  Accordingly, the shareholder standing rule bars Sipf's Fourth Claim for Relief against Herbers, but not his First and Second Claims for Relief.

### C.  SIPF'S CONTRIBUTION CLAIMS – FIRST, SECOND, AND THIRD CLAIMS FOR RELIEF

Having found Sipf has standing to bring his First, Second, and Third Claims for Relief, the issue is whether viable contribution claims remain where Sipf, Herbers, and Magnum have settled with the Sonnenbergs.  Initially, Herbers moved for summary judgment arguing that because he has entered into a settlement agreement with the Sonnenbergs, no right to contribution exists under the UCATA, C.R.S. § 13-50.5-105.  (ECF No. 165.)   After Sipf settled with the Sonnenbergs, Herbers provided supplemental briefing, arguing Sipf's settlement bars contribution under not only the UCATA but also the Colorado Securities Act.  (ECF No. 252.) Herbers contends that under C.R.S. § 13-50.5-102(4), Sipf is not entitled to contribution because his settlement with the Sonnenbergs did not extinguish Herbers' and Magnum's liability to the Sonnenbergs.  Similarly, after Magnum entered into a settlement agreement with the Sonnenbergs, Magnum joined in Herbers' arguments that Sipf's contribution claims are barred. (ECF Nos. 254, 261.)   Having carefully considered the issues, the Court finds that Sipf has no right to contribution because his settlement with the Sonnenbergs did not extinguish the alleged common liability or  discharge the alleged common obligation of the parties.  Accordingly, the issue of whether Herbers' and Magnum's settlement with the Sonnenbergs bars Sipf's contribution claim is moot.

## 1.   Factual Background

As previously stated, the Sonnenbergs filed this action against Sipf and others.  Although the Sonnenbergs filed four complaints, and Sipf (and others) filed a third-party complaint against Herbers and Magnum and designated them as nonparties who may be at fault, the Sonnenbergs never filed any claims against Herbers and Magnum.  Instead, on November 1, 2013, Herbers and the Sonnenbergs entered into a Settlement Agreement and Release of Claims (the "Herbers Settlement"), signed by all parties to the agreement.  (ECF No. 165, Ex. A.)  Also, on November 1, 2013, the Sonnenbergs signed a Settlement Agreement and Release of All Claims (the "Magnum Settlement") in favor of Magnum.  (ECF Nos. 255, 258.)  Although that agreement was signed by the Sonnenbergs on November 1, 2013, it was not signed by Magnum until February 19, 2014.   Magnum made some representations as to why the agreement was not signed until such date, but none are supported by evidence competent under Fed. R. Civ. P. 56.

Meanwhile, on January 15, 2014, Sipf and the Sonnenbergs entered into a Mutual Settlement, Compromise and Release Agreement (the "Sipf Settlement").  (ECF No. 252, Ex. 1.)  That agreement provides, in relevant part:

i)      That the parties were "desirous of settling all claims between the Parties [the Sonnenbergs and Sipf]";

ii)     That for the consideration of $500,000 by Sipf to the Sonnenbergs, the Sonnenbergs released Sipf from all liability and claims in this action;

iii)    That the Sonnenbergs' release "is not intended to and does not release any other party named in the Lawsuit, and no other party named in the Lawsuit is an intended beneficiary of this release or Agreement";

iv)     That Sipf released the Sonnenbergs from all liability in this action; and

v)      That Sipf's release "is not intended to and does not release any other party named in the Lawsuit, and no other party named in the Lawsuit is an intended beneficiary of this release or Agreement."

By Order dated February 13, 2014, upon motion filed by the Sonnenbergs, their claims against Sipf were dismissed with prejudice.  (ECF No. 251.)   As the Sonnenbergs had settled earlier with the other defendants, there being no other claims or parties remaining from the Sonnenbergs' action, that action was dismissed in its entirety, leaving only Sipf's claims against Herbers and Magnum.[11]

## 2.   Contribution under the UCATA – Herbers' and Magnum's Settlements with the Sonnenbergs

Pursuant to C.R.S. § 13-50.5-105:

(1) When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death:

(a) It does not discharge any of the other tortfeasors from liability for their several pro rata shares of liability for the injury, death, damage, or loss unless its terms so provide; but it reduces the aggregate claim against the others to the extent of any degree or percentage of fault or negligence attributable by the finder of fact, pursuant to section 13-21-111(2) or (3) or section 13-21-111.5, to the tortfeasor to whom the release or covenant is given; and

(b) It discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor.

C.R.S. § 13-50.5-105.  "[A] settlement is reached in 'good faith' in the absence of collusive conduct."  *Copper Mtn., Inc. v. Poma of Amer., Inc.*, 890 P.2d 100, 108 (Colo. 1995).   "[T]he party challenging the good faith of a settlement otherwise barring a claim for contribution has the burden of establishing that the settlement was collusive."  *Stubbs v. Copper Mtn., Inc.*, 862 P.2d 978, 984 (Colo. App. 1993), *aff'd*, 890 P.2d 100 (Colo. 1995).  The duty of good faith "extend[s]

---

[11] At that time, Ruiz-Moss was also a third-party defendant.  He has subsequently been dismissed as a party.  (ECF No. 264.)

to the nonsettling defendant – the only party that could be the victim of such collusion." *Poma*, 890 P.2d at 104 (discussing intent of the UCATA).

The parties agree the UCATA applies to both claims asserted by the Sonnenbergs; therefore, the Court will assume, without deciding, that it does.[12]   The parties do dispute, however, whether Herbers' and Magnum's respective settlements were entered into in good faith.  If the settlements were entered into in good faith, Sipf's contribution claims are barred.  The Court finds, however, it need not decide whether Sipf's contribution claims are barred by Herbers' and Magnum's settlements, *i.e.,* whether they were made in good faith, as it finds that Sipf's contribution claims are nonetheless barred by his own settlement with the Sonnenbergs.

### 3.   Contribution under the UCATA – Sipf's Settlement with the Sonnenbergs

Magnum argues that Sipf's original contribution claims are now moot.  Herbers argues that Sipf's original contribution claims were governed by C.R.S. § 13-50.5-102(1) & (2).  Both parties contend, however, that due to Sipf's settlement his *current* contribution claims are governed by C.R.S. § 13-50.5-102(4).  None of the parties apparently dispute that if the UCATA applies, a party who pays more than his pro rata share of the common liability may be entitled to contribution.  Upon consideration of C.R.S. § 13-50.5-102(4) and § 13-50.5-104(4), the Court agrees.

C.R.S. § 13-50.5-102 provides, in relevant part:

---

[12] It appears this issue has not been decided as to the Colorado Securities Act, *see First Nat'l Bank of Durango v. Lyons*, No. 13CA1907, 2015 WL 795034, at *7 (Colo. App. Feb. 26, 2015) (discussing, but not deciding, whether a statutory securities fraud claim is a tort claim), and it is questionable whether it applies to contribution based on the fraudulent inducement claim.  *See* C.R.S. § 13-50.5-102(3) ("There is no right of contribution in favor of any tortfeasor who has intentionally, willfully, or wantonly caused or contributed to the injury or wrongful death.").  In addition, the allegations under the contribution claim against Magnum are unclear, but the parties have argued, so the Court will assume, that this claim is also for contribution under both of the Sonnenbergs' claims.

(1) Except as otherwise provided in this article, where two or more persons become jointly or severally liable in tort for the same injury to person or property or for the same wrongful death, there is a right of contribution among them even though judgment has not been recovered against all or any of them.

(2) The right of contribution exists only in favor of a tortfeasor who has paid more than his pro rata share of the common liability, and his total recovery is limited to the amount paid by him in excess of his pro rata share. No tortfeasor is compelled to make contribution beyond his own pro rata share of the entire liability.

* * *

(4) *A tortfeasor who enters into a settlement with a claimant is not entitled to recover contribution from another tortfeasor whose liability for the injury or wrongful death is not extinguished by the settlement* nor in respect to any amount paid in a settlement which is in excess of what was reasonable.

(Emphasis added.)

Concomitantly, C.R.S. § 13-50.5-104(4) provides, in relevant part:

(4) If there is no judgment for the injury or wrongful death against the tortfeasor seeking contribution, his right of contribution is barred unless he has either:

(a) *Discharged by payment the common liability* within the statute of limitations period applicable to claimant's right of action against him and has commenced his action for contribution within one year after payment; ….

(Emphasis added.)

Thus, in order for a settling tortfeasor to have a right of contribution, certain requirements must be met. Among them are the requirements that the other joint tortfeasors' common liability has been extinguished "by the settlement" and their common obligation has been discharged by the settling tortfeasor's payment. This was recognized in *Miller v. Jarrell*, 684 P.2d 954 (Colo. App. 1984), cited by the parties.

In *Miller*, the settling defendants settled with the injured parties, obtaining releases which released not only the settling defendants but also the non-settling defendants after making complete payment of the parties' joint obligation, resulting in the dismissal of all claims by the

injured parties.  The settling defendants then brought an action for contribution against the non-settling defendants.  In evaluating the settling defendants' claim, the *Miller* court stated:

> There are two prerequisites to be met before a tortfeasor is entitled to contribution from a joint tortfeasor.  First, two or more persons must be jointly or severally liable in tort for the same injury to person or property or for the same wrongful death. . . . Second, a tortfeasor must have paid more than his pro rata share of the common liability.  If so, the tortfeasor's total recovery is limited to the amount paid by him in excess of his pro rata share.  Section 13-50.5-102(2), C.R.S. (1983 Cum. Supp.).

*Miller*, 684 P.2d at 956.  Thus, contribution is available because the settling tortfeasor has not only extinguished the tortfeasors' common liability but also discharged by payment that common obligation.  Only then may the settling tortfeasor seek to recover against the joint tortfeasors whose alleged common liability he has discharged.  The dispute then remaining is between the settling tortfeasor and the alleged joint tortfeasors – as to the pro rata liability of each tortfeasor for the common liability alleged by the settling tortfeasor and for the payment to discharge that common obligation made by the settling tortfeasor.

Herbers and Magnum argue no right of contribution exists as Sipf's settlement did not extinguish their liability.  They contend the settlement only releases Sipf and expressly preserves their potential liability to the Sonnenbergs.  Indeed, Herbers asserts Sipf could never have extinguished Herbers' potential liability to the Sonnenbergs because it was previously extinguished by Herbers' prior settlement agreement with the Sonnenbergs.[13]  The Court agrees that the plain language of § 13-50.5-102(4) supports Herbers' and Magnum's position.  That provision states the liability of the tortfeasor from whom contribution is sought must be extinguished "by the settlement," *i.e.*, by the Sipf Settlement.  Here, Sipf's settlement did not do so.  Instead, the only liability extinguished by that settlement is Sipf's liability.

---

[13] Magnum's potential liability, however, had not been extinguished at the time Sipf settled.  Although the Sonnenbergs signed the Magnum Settlement on November 1, 2013, Magnum did not sign their settlement document until February 19, 2014, after Sipf had signed his settlement agreement on January 15, 2014.  (ECF Nos. 252, 258.)

Sipf argues there were no claims to extinguish because the Sonnenbergs never asserted any against Magnum or Herbers despite knowing their involvement and their having been designated as nonparties at fault; the Sonnenbergs' entire action was dismissed; and the statute of limitations had run on any potential claims. Sipf's argument has appeal, especially in light of the facts and circumstances of this case. Nonetheless, even assuming, *arguendo*, that any claims (*i.e.,* the common liability) had already been "extinguished" (or did not exist),[14] there is still the question of whether Sipf has by payment discharged that common liability by paying the common obligation. Here, an examination of the Sipf Settlement shows he has not. The settlement agreement shows Sipf made payment for only his liability – that his payment was made to settle his obligation. Accordingly, Sipf's contribution claims under the UCATA are barred.

### 4.  Contribution Under the Colorado Securities Act

The remaining issue is whether Sipf's contribution claims based on any common liability under the Colorado Securities Act are also barred. Under the Colorado Securities Act, "[a]ny person liable under [C.R.S. § 11-51-604] may seek and obtain contribution from other persons liable under this section, directly or indirectly, for the same violation. Contribution shall be awarded by the court in accordance with the actual relative culpability of the various persons so liable." C.R.S. § 11-51-604(13). The Uniform Securities Act of 1985, upon which the Colorado Securities Act is based, however, provides, in relevant part, that "[c]ontribution among the several persons liable is the same as in cases arising out of breach of contract." Uniform Securities Act of 1985 § 605(d), 7C U.L.A. Master Edition 297 (2006). The Comment to

---

[14] Sipf's argument cuts both ways – he argues there is common liability but the Sonnenbergs never made any claim against Herbers and Magnum, raising the issue of the existence of any common liability. Regardless, Sipf contends there was common liability and it is that common liability which must be extinguished before there is a right to contribution.

§ 605(d) states that "[t]he last sentence regarding contribution is intended to avoid the common law rule which prohibits contribution among joint tortfeasors."  That common law rule also applied in Colorado, until the adoption of the UCATA.  *Brochner v. Western Ins. Co.*, 724 P.2d 1293, 1295, 1297 (Colo. 1986).

The Colorado Securities Act provides no further direction as to how to apply its contribution rule.  The parties appear to agree that it should be read – and applied – in conjunction with the UCATA.  Therefore, the Court will assume, without deciding, that is the proper method by which to determine whether Sipf's contribution claim based on liability for the Sonnenbergs' Colorado Securities Act claim survives his settlement.

The parties' arguments as to whether a right to contribution exists initially hinged on whether Sipf must first be "found liable" in order to seek contribution.  According to Herbers and Magnum, because Sipf has settled, he cannot be "found liable."  They reached this conclusion by analyzing the "[a]ny person liable" language under C.R.S. § 11-51-604(13) with the "where two or more persons become jointly or severally liable in tort" language under C.R.S. § 13-50.5-102(1).  But, nonetheless, they recognized that Sipf's settlement rendered § 13-50.5-102(1) inapplicable.  Instead, according to Herbers and Magnum, Sipf's "new" contribution claims based on his settlement with the Sonnenbergs are governed by § 13-50.5-102(4).  If, however, as the parties contend, contribution under the Colorado Securities Act is to be construed in conjunction with the UCATA, then it follows that if contribution is not afforded under the UCATA, then it may not be afforded under the other.[15]  Accordingly, Sipf's claims for contribution based on common liability for the Sonnenbergs' Colorado Securities Act claim are

---

[15] This result raises a question of whether statutory claims, such as those under the Securities Act, constitute a "tort" under the UCATA, as doing so appears to render the provision for contribution under the Securities Act superfluous.

also barred by his settlement with the Sonnenbergs without extinguishing the common liability or paying the common obligation.

## V.   CONCLUSION

Based on the foregoing, it is **ORDERED**

1. That Third-Party Defendants Thomas Keller, Craig Magnuson, and Magnum Actuarial Group, LLC's Motion for Summary Judgment (ECF No. 99) is **GRANTED** as to Third-Party Plaintiff Eric David Sipf's Sixth Claim for Relief for Aiding and Abetting Breach of Fiduciary Duties as stated herein and **DENIED** in all other respects;

2. That Third-Party Defendants Thomas Keller, Craig Magnuson, and Magnum Actuarial Group, LLC's Motion for Summary Judgment Regarding Defendant Sipf's Contribution Claim (ECF No. 254) is:

   (i)   **DENIED AS MOOT** as to their argument concerning shareholder standing in light of this Court's Order on ECF No. 99;

   (ii)  **GRANTED** as to their argument that Third-Party Plaintiff Sipf's Third Claim for Relief for contribution is barred by his settlement with Plaintiffs Carol Sonnenberg, Michael Sonnenberg, and American Financial Securities Holdings, Inc.'s (collectively, the "Sonnenbergs");

   (iii) **DENIED AS MOOT** as to their argument that Third-Party Plaintiff Sipf's contribution claims is barred under C.R.S. § 13-50.5-105 by Third-Party Defendants Thomas Keller, Craig Magnuson, and Magnum Actuarial Group, LLC's settlement with the Sonnenbergs; and

    (iv)    **GRANTED** as to their argument that Third-Party Plaintiff Sipf's settlement with the Sonnenbergs precludes him from seeking contribution under the Colorado Securities Act;

3. That Third-Party Defendant John Herbers' Brief Regarding Sipf's Contribution Claims (ECF No. 252), which the Court construes as a motion for partial summary judgment, is **GRANTED** and Sipf's First and Second Claims for Relief for Contribution are dismissed;

4. That "Third-Party Defendant John Herbers' Joinder in the Motion for Summary Judgment (Docket #254) Filed By The Magnum Third-Party Defendants" (ECF No. 256) is **GRANTED** as to Third-Party Plaintiff Sipf's Fourth Claim for Relief for Breach of Fiduciary Duty and **DENIED** in all other respects;

5. That Third-Party Defendant John Herbers' Motion for Summary Judgment (ECF No. 165) is **DENIED AS MOOT** in light of this Court's granting, in part, of ECF No. 252 and No. 256;

6. That all remaining pending motions (ECF Nos. 155, 170, 171, 172, 177, 180, and 181) are **DENIED AS MOOT**;

7. That the Clerk of the Court shall enter **JUDGMENT** in favor of Third-Party Defendants John Herbers, Thomas Keller, Craig Magnuson, and Magnum Actuarial Group, LLC and against Third-Party Plaintiff Eric David Sipf in accordance with this Order; and

8.   That Third-Party Defendants John Herbers, Thomas Keller, Craig Magnuson, and Magnum Actuarial Group, LLC are awarded costs and shall within 14 days of the date of this Order file a bill of costs, in accordance with the procedures under Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1, which shall be taxed by the Clerk of the Court.

DATED this 20th day of May, 2015.

BY THE COURT:

_____

RAYMOND P. MOORE
United States District Judge